IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

F I L E D
ASHEVILLE, N.C.

DEC 2 1997

U.S. DISTRICT COURT
W. DIST. OF N.C.

CIVIL NO. 1:97CV276-T

| | |
|---|---|
| CLARKE STEPHENS AMBROSE;<br>MARY SUZANNE ETTER;<br>DARYOUSH DIXON BIJARCHI; and<br>PHOENIX LAND COMPANY, INC.,<br><br>        Plaintiffs,<br><br>        vs.<br><br>JEFF HUNT, individually and officially<br>as the District Attorney of the 29th<br>Judicial District of North Carolina, and<br>JOHN AND JANE DOES 1-10,<br><br>        Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant Hunt's motion to dismiss which is opposed by the Plaintiffs. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

This action was precipitated by a motor vehicle stop of the Plaintiffs on June 1, 1996, in Lake Lure, North Carolina. Plaintiff Ambrose was charged with driving while intoxicated and the other Plaintiffs were charged with resisting arrest. Hunt is the District Attorney of the judicial district in which Plaintiffs were charged. In the complaint, Plaintiffs state they "did not sign any promise to appear" and acknowledge they did not appear at the first scheduled court date.

**Complaint, filed September 9, 1997, at 3.** After learning that Hunt had "labeled them fugitives," the Plaintiffs turned themselves in and ultimately were tried and convicted of certain charges in state district court. *Id.,* **at 4, 9.** Apparently, these convictions are currently on appeal to the Superior Court of Rutherford County, North Carolina. Plaintiffs claim that Hunt intentionally manipulated the trial schedules to delay their trials in violation of their constitutional rights and libeled them by reports to the newspapers.

Plaintiffs' complaint alleges ten causes of action, some of which are duplicative. In the first and sixth claims, Plaintiffs allege violations of 42 U.S.C. § 1983 by Defendant Hunt who is accused of making libelous statements in order to prejudice the jury array and thus deprive them of an opportunity for a fair trial. He is also alleged to have manipulated the trial calendaring system to retaliate against them for bringing this action and to coerce a guilty plea. The complaint seeks compensatory and punitive damages against Hunt in his individual capacity.[1] The complaint does not seek injunctive relief in the §1983 claims.

The second cause of action is for a violation of 42 U.S.C. § 1985 by virtue of Hunt's alleged conspiracy with unnamed others to deprive the Plaintiffs of their civil rights by making libelous statements and initiating an investigation of the Plaintiffs for anti-government activities. Again, Plaintiffs seek both compensatory and punitive damages against Hunt individually. No injunctive relief is sought.

---

[1]Plaintiffs clarify in their response to the motion that monetary relief is sought against Hunt in his individual capacity only. The complaint does not so specify, but the Court accepts Plaintiffs' stipulation.

In the third and fourth causes of action, Plaintiffs seek a temporary restraining order and a permanent injunction to preclude Hunt and all district attorneys in North Carolina from using the calendaring authority granted pursuant to N.C. Gen. Stat. § 7A-49.3(a).[2] The fifth cause of action is for a declaratory judgment that the statute is unconstitutional. The seventh cause of action is for a declaration that Hunt's conduct amounted to outrageous governmental conduct and for an injunction setting aside the convictions of the Plaintiffs in state court and enjoining any future prosecution by state authorities. Plaintiffs' remaining causes of action are state law claims for libel.

## II. DISCUSSION

Defendant Hunt has moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state causes of action upon which relief may be granted. **Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6).** Defendant alleges this Court has no actual jurisdiction over the subject matter of the action. This issue will be addressed first since a lack of subject matter jurisdiction would divest this Court from jurisdiction to entertain a motion to dismiss on other grounds. **Shepard's,** *Motions in Federal Court*, § 5.45 (2d ed. 1991).

### A.     Subject matter jurisdiction

---

[2]That statute provides in pertinent part:
> At least one week before the beginning of any session of the superior court for the trial of criminal cases, the district attorney shall file with the clerk of superior court a calendar of the cases he intends to call for trial at that session.

Defendant argues this Court lacks subject matter jurisdiction because Plaintiffs' complaint attacks state court decisions prior to the exhaustion of state court remedies; i.e., appellate review of their criminal convictions. Plaintiffs respond their convictions must be set aside because they were obtained through violations of their civil rights.

In *Simeon v. Hardin*, 339 N.C. 358, 451 S.E.2d 858 (1994), the North Carolina Supreme Court held the statute at issue is facially valid under both the United States and North Carolina Constitutions but found that a genuine issue of material fact had been raised as to whether the statute was being applied in an unconstitutional manner by the district attorney in question. *Id.*, at 379, 451 S.E.2d at 872. Here, Plaintiffs' third, fourth and fifth causes of action seek a declaration of the statute's unconstitutionality and injunctive relief. Although not clear, it appears Plaintiffs seek a declaration that the statute is facially unconstitutional as well as a declaration that it is being applied in such a manner as to deny Plaintiffs due process. To the extent that the Plaintiffs seek a declaration that the statute is facially unconstitutional, the complaint is dismissed since the State's highest court has declared its facial constitutionality. *New York v. Ferber,* 458 U.S. 747, 767 (1982) (citing *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973)) ("[T]he construction that a state court gives a state statute is not a matter subject to our review.") For the same reason, Plaintiffs' request for injunctive relief to prevent Defendant Hunt and all North Carolina district attorneys from exercising their calendaring authority pursuant to the statute is dismissed.[3] Plaintiffs are relegated to a claim that the manner in which Hunt is using his authority pursuant to the statute is unconstitutional.

---

[3]These claims are also dismissed pursuant to abstention, discussed *infra.* Plaintiffs may pursue their claims of facial unconstitutionality and injunctive relief in their pending state case.

In response to the motion to dismiss, Plaintiffs claim the decision in *Simeon* precludes any meaningful access to state courts to challenge the constitutionality of the statute. Thus, they argue, abstention should not be exercised by this Court. This argument is patently incorrect: the North Carolina Supreme Court held the plaintiff in *Simeon* had raised a genuine issue of material fact concerning whether an unconstitutional application was being made of the statute. Thus, abstention should not be denied on this ground.

Moreover, this Court may not enjoin further prosecution of Plaintiffs in the state court criminal proceedings. As recently as September of this year, the Fourth Circuit has ruled it lacks subject matter jurisdiction to entertain § 1983 claims for declaratory judgment and injunctive relief against state actors involved in state court proceedings. In *Suarez Corp. Indus. v. McGraw,* **125 F.3d 222 (4th Cir. 1997)**, the Attorney General for the State of West Virginia brought an action against plaintiffs, a direct mail marketer engaged in sweepstakes, for violations of the state's Consumer Credit and Protection Act. In response to that prosecution, plaintiff caused an advertisement to be published which was critical of the Attorney General. Thereafter, the Attorney General made certain comments to the press which the plaintiff claimed were libelous and thus, initiated the federal action pursuant to § 1983. In the state action, the Attorney General obtained a preliminary injunction prohibiting certain marketing techniques used by the plaintiff. That injunction was ultimately made final by the state court. In dismissing plaintiff's § 1983 and constitutional claims, the Circuit held

> [t]he *Rooker-Feldman* doctrine, [] makes it clear that federal courts do not possess jurisdiction to hear constitutional claims adjudicated by state courts or claims that are inextricably intertwined with the merits of a state court judgment. Lower federal courts cannot sit in direct review of final state court decisions. A plaintiff cannot

seek, in federal court, review of, or relief from, a state action or proceeding that is essentially judicial in nature.

***Id.,*** **at 228 (internal citations omitted).**

Moreover,

[i]n *Younger,*[4] the Supreme Court plainly declared that federal court equitable interference with state criminal proceedings should not be undertaken except in the most narrow and extraordinary of circumstances. Basic tenets of equity jurisprudence dictate that a court "of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." And, concerns of comity and federalism justify additional caution when a federal court is petitioned to intervene in a pending state criminal action. Consequently, federal courts may intervene in state criminal proceedings, either by way of declaratory relief or by injunction, only when there has been a "showing of bad faith, harassment, *or any other unusual circumstance that would call for equitable relief.*"

***Gilliam v. Foster,*** **75 F.3d 881, 903 (4th Cir.),** *cert. denied,* **\_\_\_ U.S. \_\_\_, 116 S. Ct. 1849 (1996) (quoting** ***Younger,*** **401 U.S. at 43-44, 54) (other citations omitted) (emphasis in original) (footnote added).** Plaintiffs claim Hunt has libeled them in the press in order to assure they will not receive a fair trial and has manipulated the trial calendar in retaliation for this lawsuit, in order to coerce a guilty plea and in an effort to make their defense unduly expensive. This conduct, they argue, meets the "bad faith" or harassment exception to the *Younger* doctrine.

"Bad faith" under the *Younger* exception generally means that a prosecution has been brought "without a reasonable expectation of obtaining a valid conviction." ***Kugler v. Helfant,*** **421 U.S. 117, 126 n.6 (1975);** ***John v. Rahman,*** **122 F.3d 1056 (table), 1995 WL 595537 (2d Cir. 1995).** Plaintiffs do not claim the initiation of the prosecution was done in bad faith; their challenge is the use of the calendaring statute to harass them. "'Harassment' means much the same, although it also

---

[4]***Younger v. Harris,*** **401 U.S. 37 (1971).**

connotes a legal exercise of authority in such a manner as to be unnecessarily oppressive." *Timerman v. Brown*, **528 F.2d 811, 814 (4th Cir. 1975) (Plaintiff alleged he was assaulted by correctional officers while handcuffed and then denied medical treatment. Other plaintiffs who offered assistance were placed in solitary confinement in order to prevent initiation of legal action. When plaintiffs sought warrants for arrests of the officers, the district attorney prevented the issuance thereof by telling the magistrate there was a requirement for an independent investigation which he never arranged. These allegations were sufficient to raise the bad faith and harassment exception.).** A prosecution may be shown to be in bad faith or harassing if it was "conducted in such way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps v. Hamilton*, **122 F.3d 885, 889 (10th Cir. 1997).** Moreover, "it is the plaintiff[s]' 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Id.* Plaintiffs claim Hunt has "libeled [them] through pejorative public statements accusing them of belonging to an antigovernment cult, and in unconstitutionally manipulating the trial calendar to gain an unfair advantage over the Plaintiffs at trial." **Plaintiffs' Memorandum in Opposition to Motion to Dismiss, filed November 7, 1997, at 7.** In the complaint, Plaintiffs allege that trial delays "economically prejudice" them because they have subpoenaed witnesses to appear for trial only to have the case continued. This, they claim has occurred on "several occasions." The libelous statements attributed to Hunt include 1) his characterization of the Plaintiffs as part of an anti-government cult called Eternal Values with ties to New York and Texas; 2) his statement that Plaintiffs initiated a federal court action after their arrests in order to intimidate him; 3) his characterization of that complaint as a rambling, unclear indictment against the government; 4) a

statement that Plaintiffs hold themselves above the law; 5) and his refusal to confirm or deny whether he will seek further investigation of the group. No copies of the news articles in which the statements were alleged to have been made are attached to the complaint or to Plaintiffs' response to the motion to dismiss.

These allegations are insufficient to make the showing necessary to meet the bad faith or harassment exception to the *Younger* doctrine. Federal courts should avoid impeding state court proceedings "'*absent allegations and proof of bad faith.*' The bad faith exception is narrow and is to be granted parsimoniously." ***Wightman v. Texas Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996),** *cert. denied,* **___ U.S. ___, 117 S. Ct. 744 (1997) (holding allegations that the state bar was harassing the plaintiff insufficient absent proof) (citations omitted) (emphasis in original);** *Phelps, supra* **(district attorney who filed twenty cases against anti-homosexual protesters not shown to have acted in bad faith or to harass).** Claims of bad faith and harassment "require[] more than the frenzied brandishing of a cardboard sword." ***Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 639 (1st Cir. 1996) (conclusory allegations insufficient).** "Over thirty years of litigation since *Younger* testify to the strength of its presumption against federal interference; in no case has the Supreme Court found the bad faith exception to apply." ***Gilliam*, 75 F.3d at 906 (Wilkinson, J., dissenting).**

This Court finds the state court criminal proceedings are ongoing and implicate important state interests. Moreover, through the appellate process or through the initiation of civil proceedings thereafter, Plaintiffs have adequate opportunity for the presentation of their federal and constitutional claims in connection with their convictions. ***Employers Resource Management Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995),** *cert. denied,* **___ U.S. ___, 116 S. Ct. 816 (1996).**

Moreover, Plaintiffs' allegations fail to establish sufficient proof of bad faith or harassment to overcome the presumption in favor of allowing the state court to operate independently of interference from this Court. Plaintiffs' claims seeking the vacatur of their convictions and an injunction against future prosecution are claims over which this Court has no subject matter jurisdiction. *Suarez, supra*; *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 199 (4th Cir. 1997). The third and fourth causes of action are dismissed. That portion of the seventh cause of action which seeks an injunction is dismissed.

**B.      Personal jurisdiction - absolute immunity**

Defendant also seeks dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction based on his absolute immunity as a prosecutor.[5] "'[P]ersonal privilege[s] of absolute or qualified immunity . . . are available to governmental officials only with respect to damage claims asserted against them in their individual capacities.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1146 (2d Cir. 1995) (citations omitted). Thus, if this immunity applies, it applies to the claims seeking monetary damages from Hunt individually.

> While traditional prosecutorial activities are accorded absolute immunity, the scope of absolute prosecutorial immunity has been narrowly drawn. [The Supreme Court has held] unanimously that a prosecutor's statements to the media are not protected by absolute immunity. . . . Thus, looking only to the face of the complaint, [plaintiffs'] allegations do not show that the defense of absolute immunity will vitiate

---

[5]It appears that a defense based on immunity is more properly raised as a motion to dismiss for lack of subject matter jurisdiction. *RPR & Assoc. v. O'Brien/Atkins Assoc., P.A.*, 921 F. Supp. 1457, 1460 (M.D.N.C. 1995), *aff'd without op.*, 103 F.3d 120 (4th Cir. 1996). The characterization, however, does not change the method of review and is, therefore, of no concern.

*entirely* its ability to recover [] since each alleges communications to the media, controlled by [Hunt]. . . .

*Suarez*, 125 F.3d at 229-30 (internal citations omitted) (emphasis in original). To the extent Plaintiffs' claims are based on allegedly libelous statements made by Hunt to the media or the press, he is not entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993) **("The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the State's case in court, or actions preparatory for these functions.").**

The other allegations against Hunt involve his alleged manipulation of the trial calendar to delay Plaintiffs' trial, an allegation of an *ex parte* contact with the undersigned, the initiation of investigations of the Plaintiffs to show anti-governmental activity, and failure to provide discovery in the misdemeanor cases pending against Plaintiffs. Prosecutors are absolutely immune for conduct involving "the initiation and pursuit of a criminal prosecution, including presentation of the State's case at trial." *Id.*, at 269. The conduct need not occur solely in the courtroom; the immunity attaches to "'actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Id.*, at 272 (citation omitted). Thus, any *ex parte* contact or failure to provide discovery is entitled to absolute immunity and Plaintiffs' claims must be dismissed.[6] *Carter v. Burch*, 34 F.3d 257, 262-63 (4th Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995) (a prosecutorial decision to withhold exculpatory evidence and the presentation at trial of false testimony entitled to absolute immunity).

---

[6]The undersigned notes for the record that he has not engaged in any *ex parte* contact with Defendant Hunt in the context of this or any other action. Plaintiffs' counsel admonished that future speculative accusations may result in Rule 11 sanctions.

As to the remaining accusations, the issues are whether Hunt's calendaring is an administrative or quasi-judicial function and whether the initiation of investigations, if indeed done, was an investigatory or quasi-judicial function. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, **509 U.S. at 274.** At the time of the alleged manipulation of the trial calendar involving Plaintiffs' appeal to superior court, the Plaintiffs had been both arrested and convicted in district court of criminal charges. Thus, if Hunt's function in calendaring trials is as an advocate rather than administrative, he is entitled to absolute immunity.[7] Determining which cases are to be called for trial is akin to making the preparations to assure that a criminal defendant is present for trial. "One of the most important duties of a prosecutor pursuing a criminal proceeding is to ensure that defendants . . . are present at trial." *Ehrlich v. Giuliani*, **910 F.2d 1220, 1223 (4th Cir. 1990).** In *Pinaud, supra,* plaintiff's §§ 1983 and 1985 claims were based on charges that prosecutors had him transferred from a comfortable federal prison to a state prison in order to coerce his guilty plea to state charges. The court concluded this function was not administrative in nature because the state prosecution could not occur until the prisoner was in state custody. *Pinaud,* **52 F.3d at 1150.**

> If prosecutors are concerned with possible liability when they take the steps necessary to make a defendant available for prosecution, the decision whether or not to prosecute may be directly affected. And that is precisely the type of concern that absolute immunity seeks to foreclose. . . . The fact that Pinaud claims that *his* transfer into state custody was unnecessary and done simply to coerce a guilty plea from him does not alter, and really has no bearing on, this immunity analysis. . . . Since, [] the extent of immunity always depends upon the nature of the activity in question, and

---

[7]The paucity of case law on point to this issue is representative of the fact that North Carolina remains one of the few states which allows the district attorney to control the scheduling of criminal cases for trial.

not upon how wrongly the particular actors may have performed that activity in a specific instance, Pinaud's assertions, though disturbing, do not help him.

*Id.* **(but holding that repeated transfers from the county jail to the holding cell at the courthouse on days when plaintiff's case was not scheduled for trial not entitled to absolute immunity) (internal citations omitted).** Plaintiffs' claim that Hunt deliberately manipulated the trial calendar to delay their trial, to coerce guilty pleas, or to make their trial more expensive is entitled to absolute immunity. Their trial could not occur until scheduled and the fact that it was later continued or not reached, even if done with an improper motive, is irrelevant. Thus, Plaintiffs' claims against Hunt on this ground, whether raised as § 1983, conspiracy or other theories are dismissed.

"[I]nvestigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley,* 509 U.S. at 273. Plaintiffs claim that Hunt initiated an investigation into their alleged anti-governmental activities in retaliation for their bringing a federal lawsuit.

> Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection.

*Ireland v. Tunis,* **113 F.3d 1435, 1445 (6th Cir. 1997),** *petition for cert. filed,* **66 USLW 3264 (Sept. 23, 1997) (citing** *Buckley, supra***).** Plaintiffs have alleged that Hunt improperly initiated an investigation. Hunt has not responded that such an investigation was not initiated or that, if initiated, there was probable cause to believe Plaintiffs were involved in anti-governmental activity. Thus, at this point he is not entitled to absolute immunity. *Buckley, supra; Pachaly v. City of Lynchburg,* **897 F.2d 723, 727 (4th Cir. 1990) (district attorney who was present during post-indictment**

search of offices engaged in obtaining evidence to prosecute indictment and thus entitled to absolute immunity); *Fletcher v. Kalina*, 93 F.3d 653, 655 (9th Cir. 1996), *cert. granted*, ___ U.S. ___, 117 S. Ct. 1079 (1997) (noting *Buckley's* holding that a prosecutor is not absolutely immune when he fabricates evidence during investigatory stage of prosecution and holding a prosecutor is not absolutely immune when preparing a declaration in support of an arrest warrant).

## C. Eleventh Amendment immunity

Next, Hunt moves to dismiss the complaint because it seeks monetary damages against him in his official capacity. State officials are not "persons" for purposes of an action brought pursuant to §§ 1983 or 1985. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Plaintiffs respond that their claims for monetary damages are against Hunt only in his individual capacity. "[S]tate officials sued in their individual capacities are 'persons' for purposes of § 1983." *Biggs v. Meadows*, 66 F.3d 56, 59 (4th Cir. 1995) (citing *Hafer v. Melo*, 502 U.S. 21, 23 (1991)). Because the complaint fails to specify in what capacity the Defendant is sued, the claims against Hunt in his official capacity pursuant to §§ 1983 and 1985 for monetary damages are dismissed.

Plaintiffs also respond that suits pursuant to §§ 1983 and 1985 for injunctive relief are not barred by the Eleventh Amendment. It is true that "Eleventh Amendment immunity does not protect state officials in their official capacities from § 1983 claims for injunctive relief." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (citing *Will*, 491 U.S. at 71 n.10). However, Plaintiffs' complaint does not seek any injunctive relief in its causes of action for violations of §§ 1983 or 1985. **Complaint, at 12, 13, 17.** Therefore, this portion of the Defendant's motion is granted.

**D.    Failure to state claims upon which relief may be granted**

The remainder of Defendant's motion attacks the complaint for failure to state claims upon which relief may be granted.

"In ruling on a motion to dismiss for failure to state a claim, the court must construe the allegations of the complaint favorably to the pleader, and the material allegations of the complaint are taken as admitted." **Shepard's, *Motions in Federal Court*, § 5.124 at 367 (citing *Sheuer v. Rhodes*, 416 U.S. 232 (1974); *Jenkins v. McKeithen*, 395 U.S. 411 (1969), *reh'g. denied*, 396 U.S. 869 (1969)).** Conclusory allegations are examined in light of the factual claims. *Id.* "To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id., § 5.123 at 366.* If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Defendant moves for dismissal of the §§ 1983 and 1985 causes of action based on libelous or defamatory comments. The complaint alleges that by his libelous statements, "Hunt attempted to poison the pool of potential jurors in Rutherford County through the false statements . . . thus preventing the Plaintiffs from receiving a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution." **Complaint, at 12.** Plaintiffs received a nonjury trial at the district court level and were convicted of certain offenses. They have appealed that determination and will receive a *de novo* jury trial at the superior court level.

In order to state a claim pursuant to § 1983, the Plaintiffs must allege the violation or deprivation of a constitutional right by a person acting under color of state law. Plaintiffs claim that

defamation of their reputations was done to deprive them of their right to a fair trial because the jury

array will be prejudiced against them. "It is well established that even if statements by public

officials may have been defamatory under state law, that tort alone does not constitute a

constitutional deprivation." *Jackson v. Long*, **102 F.3d 722, 730 (4th Cir. 1996).**

> To implicate a constitutionally protected liberty interest, defamatory statements must
> at least "imply the existence of serious character defects such as dishonesty or
> immorality" "that might seriously damage [the plaintiff's] standing and associations
> in his community" or "foreclose[] his freedom to take advantage of other
> employment opportunities."

*Zepp v. Rehrmann*, **79 F.3d 381, 388 (4th Cir. 1996) (citations omitted).** Statements of

incompetence and "outside activities" are not sufficient to implicate a constitutionally protected

liberty interest. *Id.* Plaintiffs allege that Hunt accused them of being in a cult, being anti-

government, and holding themselves above the law. Such statements do not rise to the level of a

constitutional deprivation.

Moreover, Plaintiffs cannot show any deprivation because they have not yet had their jury

trial. The mere possibility of a future constitutional deprivation is insufficient to state a claim under

§ 1983.

> "[R]eputation alone is not an interest protected by the Due Process Clause." [In Paul
> v. Davis, 424 U.S. 693 . . ., the Supreme Court] held that a plaintiff complaining that
> his liberty interest in his reputation has been injured states an actionable claim only
> if he has suffered an additional deprivation. . . . [T]he "possible loss of future
> employment opportunities is patently insufficient to satisfy the requirement imposed
> by *Paul* that a liberty interest requires more than mere injury to reputation."

*Kelly v. Borough of Sayreville, N.J.*, **107 F.3d 1073, 1077-78 (3d Cir. 1997) (other citations**

**omitted); see also,** *Aversa v. United States*, **99 F.3d 1200, 1216 (1st Cir. 1996) ("in order to state**

**a cognizable claim that defamation together with loss of employment worked a deprivation of**

a constitutionally-protected liberty interest, a plaintiff must allege that the loss of employment resulted from some further action by the defendant in addition to the defamation"); *State of Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995) ("damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983"). The cause of action pursuant to § 1983 based on defamatory statements is therefore dismissed.

Defendant also attacks the sufficiency of the cause of action for conspiracy. The complaint alleges

> By virtue of his joint actions with other individuals, John and Janes Does 1-10, whose names are unknown at this time, in making the libelous statements concerning the Plaintiffs and in investigating the Plaintiffs for "antigovernment" action, Hunt conspired with one or more other persons to deprive the Plaintiffs of their civil rights, in violation of 42 U.S.C. §§ 1985(2) and 1985(3).

**Complaint, at 13.** Section 1985(2) prohibits a conspiracy to hinder or obstruct justice with intent to deny a citizen equal protection. In order to state a claim pursuant to § 1985(3), a plaintiff must allege a conspiracy of two or more persons who are motivated by a discriminatory animus to deprive a citizen of equal protection and which causes an injury to that plaintiff as the result of an overt act committed by the defendants. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). The complaint alleges that Hunt's conduct was taken in retaliation for Plaintiffs' initiation of a federal action. **Complaint, at 6.** It does not allege that Defendant's actions were taken out of discriminatory animus. *Gray v. Laws*, 915 F. Supp. 762 (E.D.N.C. 1994), *aff'd in part, vacated in part on other grounds*, 51 F.3d 426 (4th Cir. 1995). And, there is no allegation of an agreement among two or more persons. "[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional

rights." *Simmons*, at 1377; *Davis v. Hudgins*, 896 F. Supp. 561 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1440 (1997). "[M]erely conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action" are also insufficient to state such a claim. *Simmons*, **at 1376.** Speculation, suspicion and feelings are also insufficient. *Boykin v. University of Pennsylvania*, 893 F. Supp. 409 (M.D. Pa. 1995), *aff'd*, 91 F.2d 122 (3d Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 739 (1997). It is noted that Plaintiffs' response fails to address this ground for dismissal. The allegations of the complaint are insufficient to state a claim for conspiracy under either subsection of § 1985.

Plaintiffs have sufficiently alleged that Hunt has engaged in conduct by manipulation of the trial calendars which have operated to deprive them of their right to due process and equal protection. Thus, Plaintiffs' claim that the statute, as applied by Hunt, is unconstitutional survives the motion to dismiss. Plaintiffs have also sufficiently alleged, at least at this juncture, that Defendant Hunt improperly initiated an investigation of them. Therefore, that portion of their § 1983 claim remains.

The seventh cause of action seeks a declaration that Hunt's conduct qualifies as outrageous government conduct sufficient to set aside their convictions and an injunction from future prosecution. For the same reasons stated above, the *Younger* doctrine of abstention requires this Court to abstain from exercising jurisdiction. Moreover, it is noted that the conduct at issue does not qualify as "outrageous government conduct." *United States v. Osborne*, **935 F.2d 32, 36 (4th Cir. 1991) ("In order to constitute a due process violation, the government's conduct must be so outrageous as to shock the conscience of the court. Government conduct is not outrageous simply because it may be somewhat offensive. [T]he appellate courts have over time continued**

to demonstrate a high shock threshold in the presence of extremely unsavory government conduct . . . ."); *United States v. Jones*, 18 F.3d 1145, 1154 (4th Cir. 1994); *United States v. Daniel*, 3 F.3d 775, 779 (4th Cir. 1993), *cert. denied*, 510 U.S. 1130 (1994).

The remaining claims are Plaintiffs' pendent state law claims for libel. While the complaint is sufficient to pass muster under the Rule 12(b)(6) standard, the Court notes that the determination of whether statements constitute libel is a question of law. *Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 276, 432 S.E.2d 428, 433 (1993), *rev. denied*, 335 N.C. 770, 442 S.E.2d 517 (1994). This issue, therefore, should be renewed at the summary judgment stage.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss is hereby **GRANTED IN PART AND DENIED IN PART** as set forth below:

1.  The Plaintiffs' facial challenge to the constitutionality of N.C. Gen. Stat. § 7A-49.3(a) is dismissed;

2.  The Court abstains from exercising jurisdiction over Plaintiffs' request for injunctive relief in causes of action three and four to prevent Defendant Hunt and other state district attorneys from exercising their authority pursuant to N.C. Gen. Stat. § 7A-49.3(a) and those claims are dismissed;

3.  The Court abstains from exercising jurisdiction over Plaintiffs' request for injunctive relief in cause of action seven to prevent further criminal prosecution and that claim is dismissed,

4.  The Court abstains from exercising jurisdiction over Plaintiffs' request for vacatur of their criminal convictions in cause of action seven and that claim is dismissed;

5. The Court abstains from exercising jurisdiction over Plaintiffs' cause of action for outrageous government conduct in cause of action seven and that claim is dismissed;

6. Defendant Hunt, in his individual capacity, is entitled to absolute immunity in connection with any alleged *ex parte* communication, failure to provide discovery, and calendar manipulation in causes of action one and six;

7. Defendant Hunt, in his individual capacity, is entitled to absolute immunity in connection with any alleged calendar manipulation in cause of action two;

8. Plaintiffs have failed to state a claim pursuant to § 1983 against Defendant Hunt in his official capacity and therefore that cause of action is dismissed;

9. Plaintiffs have failed to state a claim pursuant to § 1985 against the Defendants in either their individual or official capacities and that cause of action is dismissed;

10. Plaintiffs have failed to state a claim pursuant to § 1983 based on libel or defamation against the Defendant Hunt in either his official or individual capacity;

11. Plaintiffs have stated a claim against Defendant Hunt in his individual capacity for a violation of § 1983 based on an allegation of improper investigation;

12. Plaintiffs have stated a claim against Defendant Hunt for state law defamation, slander or libel;

13. Plaintiffs have stated a claim for declaratory judgment that N.C. Gen. Stat. § 7A-49.3(a) as applied by Defendant Hunt is unconstitutional.

The only claims remaining in this action against Defendant Hunt are the fifth cause of action for declaratory relief, the remaining portion of the § 1983 claim, and the pendent state law claims for libel and defamation. The only cause of action asserted against the unidentified Defendants Jane and

John Does 1-10 was the second cause of action pursuant to § 1985. Since the Court has dismissed

that cause of action above, those Defendants are hereby dismissed from this action.

THIS the ___2nd___ day of ~~November~~ December KTJ, 1997.


LACY H. THORNBURG
UNITED STATES DISTRICT COURT JUDGE

United States District Court
for the
Western District of North Carolina
December 3, 1997

\* \* MAILING CERTIFICATE OF CLERK \* \*

Re:  1:97-cv-00276

True and correct copies of the attached were mailed by the clerk to the
following:

       Carol B. Andres, Esq.
       120 College St.
       Asheville, NC  28801

       Lamar D. Treadwell II, Esq.
       600 Jefferson
       Suite 700
       Houston, TX  77002

       David F. Hoke, Esq.
       NC Dept of Justice
       P. O. Box 629
       Raleigh, NC  27602-0629

cc:
Judge                    (X)
Magistrate Judge         ( )
U.S. Marshal             ( )
Probation                ( )
U.S. Attorney            ( )
Atty. for Deft.          ( )
Defendant                ( )
Warden                   ( )
Bureau of Prisons        ( )
Court Reporter           ( )
Courtroom Deputy         ( )
Orig-Security            ( )
Bankruptcy Clerk's Ofc.  ( )
Other_____     ( )

Date: 12/3/97

Frank G. Johns, Clerk

By: _Elizabeth J. Burton_
     Deputy Clerk